[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff wife brought this action seeking a dissolution of the marriage on the grounds of irretrievable breakdown, custody of the minor child, alimony, support, and other relief. The defendant husband appeared by counsel, and filed an answer admitting the irretrievable breakdown of the marriage and a cross-complaint seeking joint custody and other relief. All statutory stays have expired and the court has jurisdiction. The court heard the evidence and finds the following facts.
The wife, whose maiden name is Kathleen Drum, CT Page 8345 married the husband on May 4, 1968, at Lakehurst, New Jersey. The wife has resided in the State of Connecticut continuously for at least one year before this action was commenced. The parties have one minor child issue of the marriage, Casey Bitgood, born November 27, 1978. There are two other children issue of the marriage, both of whom have reached their majority. Dana, born March 27, 1975, became 18 during the pendency of this action. No other minor children have been born to the wife since the date of the marriage.
Neither party, nor any of the children, receive public assistance. The parties have agreed that their marriage has broken down irretrievably, and from the evidence, the court so finds.
The parties also agreed on the record that joint legal custody of Casey be awarded to them, with primary physical custody and residence with the mother and reasonable rights of visitation with the father. The presumption created by General Statutes 46b-46a(b) therefore applies that joint custody is in the child's best interests and from the evidence the court so finds.
The wife is 48 years of age, a high school graduate with two years of college and in good health. She has worked a number of part-time jobs during the marriage, including office clerical and sales clerk at food and supermarkets. For approximately two years between 1989 and 1991, she worked full-time for Mitchell's Market as a deli or meat clerk and averaged about $20,000 per year, until it closed and went bankrupt. She now has two part-time jobs: one at Stop Shop for 21-23 hours a week at $6.85 per hour as a sales clerk; the other as a waitress at Steak Loft, one night a week. From both jobs, she earns gross pay of $274 per week and nets about $215 per week. She obtains no benefits from either job except for health insurance for herself alone, for which she pays $2.50 per week. This is so although she is a union member at her Stop Shop job and pays dues. Aside from her sales clerical skills, she has no other apparent vocational skills.
The husband is 49 years of age and is a high school graduate with three years of college. He has been employed by the State of Connecticut continuously for the past 21 years as a supervisor in the Department of Income CT Page 8346 Maintenance. He now earns $847.48 weekly, and shows a net of $510.03 per week on his financial affidavit. He has substantial benefits in his job, including health and medical insurance, major medical, life insurance and a pension.
The parties' major assets include the family home which is jointly owned and known as 16 Brook Road, Niantic, Connecticut. The parties have submitted appraisal values of the home as follows: husband's appraiser, McBride, $80,000; wife's appraiser, Silverstein, $83,000; husband's affidavit, $82,000; wife's affidavit, $83,000. The court finds the value to be $81,000. There are two mortgages on the property with an aggregate principal balance of approximately $62,000 leaving an equity of $19,000.
The parties also own a 27' Tartan sailboat, which was purchased from the proceeds of the second mortgage placed on the home. The sailboat, the parties agree, is now worth $16,000. The remainder of the second mortgage proceeds, (the second mortgage has a present balance of $48,000) were used to pay household bills, credit card balances and roof repairs.
The husband's retirement plan by reason of his 21 years of employment with the state and four years of "military service" that he has bought into the plan, has made him fully vested, and entitles him to receive $1,740 per month for life if he retires at age 55. According to John A. Marcure, plaintiff's expert, this is based on his examination of the plan, and an assumption that the husband's average salary for the past three years equalled $41,752 per annum. Marcure opined in his report, which was admitted without objection, that the present value of husband's plan was $166,139. The husband believed its present value was in the neighborhood of $120,000. Both parties appear eligible to collect social security benefits upon their respective retirements.
The parties also each have an automobile; the wife's has a loan against it, the husband's is free and clear. They also have U.S. savings bonds owned jointly and purchased through husband's payroll deductions, which have a present value of about $1,000.
Against this asset picture, they show about $11,000 CT Page 8347 in joint debts on their financial affidavits. In addition, the husband has $3,500 for which he is solely responsible, the wife shows about $6,400 including her car loan, attorney's fees and a doctor bill, the exact balance of which was unstated.
This 25-year marriage had its ups and downs, and was buffeted by problems and discord with the two older children, both of whom left the home shortly after becoming 18. The parties, despite some differences over money management, parenting the children, and difficulties in communication and accommodating each other's needs and wishes, stayed together until early 1991. By then, the husband began a relationship with another woman whom he says he loves. He believes his love is reciprocated and he now wants out of the marriage. When the wife learned of the relationship, she became very distraught and upset and sought counseling. The husband moved out of the family home and resides on the sailboat in clement weather. In the colder months, he moves in with his aunt and pays $50 per week room and board. Each party bears a share of the responsibility for the breakdown of the marriage, but the court finds, on this record, that the husband's share is greater.
The minor child, Casey, now lives with the mother in the home. From the children's births, she has been their primary caretaker, has cooked and cleaned the home, done the laundry and chauffered the children around. She has been the homemaker and managed the household, more so in the earlier years, which permitted the husband to work full time, advance in his employment and obtain a fully vested retirement/pension plan. The court therefore gives recognition, as it must, to the wife's non-monetary contributions, and her monetary contributions to the acquisition, preservation and appreciation in value of the family's assets. See O'Neill v. O'Neill, 13 Conn. App. 300, cert. denied, 207 Conn. 806 (1988). The O'Neill court said, at page 311: "An equitable division of property upon divorce or dissolution envisions that full recognition by the courts will be given to the noneconomic contributions of both spouses . . . . A property division ought to accord value to those non-monetary contributions of one spouse which enables the other spouse to devote substantial effort to paid employment which, in turn, enables the family to acquire tangible marital assets. The investment of human capital in CT Page 8348 homemaking has worth and should be evaluated in a property division incident to a dissolution of marriage. We hold, accordingly, that an equitable distribution of property should take into consideration the plaintiff's contributions to the marriage, including homemaking activities and primary caretaking responsibilities." (Internal citations omitted.)
The court notes in this regard that the wife has a limited earning capacity, which appears to be about $400 per week, even if she seeks and obtains full-time employment, unless she obtains and participates in substantial retraining. On the other hand, the husband has not only superior earnings, but superior earning capacity, job security, a fully vested retirement/pension plan, and a greater ability to acquire capital assets and income in the future than the wife has.
In the parties' child support guideline worksheets, the wife claims that the husband has a net disposable income available for child support of $620.05, and therefore, seeks $177 per week. The husband claims on the contrary that his net income is $529.64[1] and therefore that his child support payment according to the present guidelines should be $149 per week. The significant difference between the two is the amount of the weekly federal income tax withholding, which the husband claims for a single parent with one dependency exemption is $170; the wife's calculation accords him two exemptions, one for himself and one for the child, and calculates a weekly withholding for federal income tax of $78. The court agrees with the husband, but when it adds back to the $510.03 weekly net income shown on his affidavit, sums of $12.50 for the savings bond deduction and $12.50 for the child's exemption, the court finds that his net income is about $535 per week. Hence, the proper amount of his child support, according to the guidelines, should be, and is, $155.50 per week.
The court has considered all of the factors contained in General Statutes 46b-81, 46b-82 and 46b-84 in the light of the evidence and findings recited and enters the following orders.
A decree of dissolution of the marriage is granted on the ground of irretrievable breakdown. CT Page 8349
Joint legal custody of the minor child, Casey, is awarded to the parties; his primary physical custody and residence to be with the mother, subject to father's reasonable rights of visitation.
Father shall pay child support in the amount of $155.50 per week to mother; as mother has waived her claim to an immediate wage execution, the child support shall be secured by a contingent wage execution. The father shall have the dependency exemption for 1993 and subsequent years for Casey for federal and state income tax purposes, and the mother shall cooperate to that end.
The father shall maintain his present job-related group health, medical and major medical insurance for the benefit of the child and the parents shall equally share any unreimbursed or uncovered health expenses for Casey. A General Statutes 46b-84(c) order shall enter, and if mother pays more than 50 percent of any such balance, father shall reimburse her within thirty days of his receipt of copies of the bills and a statement of explanation.
The father shall convey, by quitclaim deed to mother, all of his right, title and interest in and to the jointly-owned premises at No. 16 Brook Road, Niantic subject to the mortgages thereon, which she shall assume and agree to pay and save him harmless therefrom. Simultaneously, mother shall execute and deliver her promissory note to father in the amount of $5,000 without interest, secured by a mortgage on said premises, which shall be due and payable on January 1, 2000, or sooner, upon the wife's death, remarriage, sale of the premises, ceasing to use it as her principal place of residence or her living together with an unrelated person within the meaning of General Statutes 46b-86(D). At the wife's request, husband shall cooperate with her securing refinancing of the present mortgages on the premises in a principal amount not to exceed $62,000 plus closing costs and subordinate his mortgage to the new first mortgage.
The husband shall pay to the wife as periodic alimony the sum of $50 per week until December 1, 1996, when said alimony shall be increased to $100 per week. Said alimony payments shall be taxable to the wife and deductible by husband for federal income tax purposes and shall not be further modified as to term or amount, and shall terminate CT Page 8350 upon the death of either party, the wife's remarriage or her living together with an unrelated person within the meaning of General Statutes 46b-86(b). Said alimony payments shall also terminate upon wife's eligibility to receive benefits from husband's retirement/pension plan as later set forth.
Husband shall irrevocably designate the wife as beneficiary of his job-related group life insurance policy with Aetna in the face amount of $38,000 shown on his financial affidavit so long as he shall be obligated to pay alimony or child support hereunder.
The husband shall transfer to wife, by qualified domestic relations order (QDRO) thirty (30%) percent of his retirement/pension plan through his state employment. He shall remain as survivor beneficiary of the portion transferred to wife; and she shall remain as survivor beneficiary of fifty (50%) percent of husband's remainder interest in the plan. In the event a survivor beneficiary predeceases the other, the survivor shall be free to designate another survivor beneficiary. The court shall retain jurisdiction to modify this decree and the QDRO solely for the purpose of ensuring compliance of the QDRO with applicable state and/or federal law relating to retirement/pension plans.
The wife shall take and have her 1989 Chevrolet, the personal property now in her possession, and her bank accounts, free of husband's claim. The husband shall take and have free of wife's claims the 27' Tartan sailboat, his 1983 Toyota truck, the U.S. savings bonds, and his checking and savings accounts shown on his financial affidavit, the personal property now in his possession, and the following: an Hitachi 13" TV; a framed line drawing of the boat; a framed print of a marsh and cove; a gun cabinet; his chainsaw and assorted tools and a maple chest of drawers which shall be turned over to him within thirty days from the date of this decree.
The husband shall pay and save the wife harmless from all of the debts shown on his financial affidavit, including the debts he designates as "joint". The wife shall pay and save the husband harmless from the debts shown on her financial affidavit, excepting the liabilities designated as joint. CT Page 8351
The husband shall pay to the wife toward her attorney's fees the sum of one thousand ($1,000) dollars on or before January 1, 1994; the court finds that a denial of the wife's request for counsel fees in toto would undermine or impair the other financial orders herein.
TELLER, J.